## MASON *vs.* JONES and others.

Barbour.
2  229
70h 277
2b 229
7ap441
Barbour.
2b 229
16ap444
2b      229
65 A.D ¹ ³ 566

A testator, after having given to three of his daughters, each one fourth of his real and personal estate, absolutely, and another fourth to G. and his children, by the sixth clause of his will devised the remaining one equal undivided half of his estate, real and personal, to his executors, in trust, to rent, invest, and improve the same, at their discretion; and to collect and receive the rents, issues, profits, interest, dividends, &c., and out of such income to pay certain annuities to each of his three sons, J., H., and M., and to his daughter, H. A. The annuity to the latter was to cease on her surviving her husband; and then she was to take one-fourth of the half, absolutely; and if her husband survived her, her annuity was to continue to him for life, and the eighth of the estate, subject to that annuity, was to vest in her issue, by representation. On the death of the sons J. or H., leaving a widow, she was to have the annuity of her husband during her life. A discretionary power was given to the trustees to increase the annuities respectively, during the lifetimes of the sons and the daughter, H. A., during their lives. Should the clear net income of the trust fund exceed the annuities, the surplus in regard to the three-fourths thereof, accruing after one month from the testator's death, was to accumulate equally for the benefit of the children or other issue of H. A., J., and H., respectively, during their minorities, and to be paid to them respectively at the age of twenty-one; such children, or other issue, taking their respective shares thereof by representation and not *per capita*. So long as those three were without issue living, the surplus of the income of their trust shares, after satisfying the annuities to them, or the husband or widows, was to be paid to the three other daughters, to the issue of H. A., to G., and to the issue of H., and J., if either had any, equally, such issue taking by representation and not *per capita*. The testator then directed that upon the death of J., one-fourth of the trust fund, together with the surplus of income thereof during his lifetime, after satisfying the annuity to him, should go to the several persons, and for the several estates, and upon the several contingencies, as last above specified. And upon the deaths of J., and H., respectively, two other fourth parts of the trust fund were given to their respective issue, subject to the respective annuities to their widows. But should those sons leave no issue, those fourth parts, subject to the widows' annuities, were given to the three daughters first named, to G., or his issue, to H. A., or her issue, and to the issue of either J., or H., if any there were; the issue or children, in either case, taking *per stirpes*, and not *per capita*. On a bill filed for the construction of the will,

*Held*, that the sixth devising clause of the will was to be understood as a devise to the executors, in trust, of half of the testator's estate, in four equal undivided shares, by which several trust funds were created for the payment of the respective annuities, each share being held by the trustees under a separate trust, and each annuity being payable out of a distinct fourth part of the income, and that the devise contained in that clause was valid.

Mason *v.* Jones.

*Held also,* that the trust created by that clause of the will did not suspend the absolute ownership of the property, or render the same inalienable, for a longer period than is allowed by law.

*Held further,* that during the one month from the death of the testator, in which no accumulation could commence, there was no undue suspension of the power of alienation; inasmuch as the trusts for the payment of the annuities were not suspended, but commenced at the death of the testator; and as the title vested immediately in the trustees, for the purposes of those trusts; and because the annuities would absorb the rents and income of that month, so that no surplus, even for that period, would remain undisposed of by the will.

Where a deed, or a will, admits of a twofold construction, one of which would render it void, and the other would uphold it, the court is bound to give it that construction which will leave it effectual in law.

In construing wills, words may be transposed, and changed, when necessary, in order to get at the correct meaning.

Merely creating a *charge* upon an estate will not have the effect to suspend the absolute ownership, or power of alienation.

The payment of annuities is a legitimate purpose of a trust.

A direction to trustees " to pay" to the *cestui que trust* the rents and profits of real estate, or the income of personal estate, is, in legal effect, the same as a trust to receive such rents and profits, or income, and " to apply the same to his use," and is valid, under the provisions of the revised statutes.

Although the terms of a trust may seem to contain an unqualified direction to the trustee to pay over money to the *cestui que trust,* yet the trustee is to exercise a discretion on that subject; and he is not to place money, or whatever other articles he may furnish, directly in the hands of a beneficiary who, from his mental or moral condition, is incapable of using it beneficially to himself.

Cases in which, and the purposes for which, accumulations of rents and profits of real estate may be made.

Accumulations of the income of personal property are placed on the same footing, by statute, and are governed by the same rules, as accumulations of the rents and profits of real estate.

Where a trust of accumulation is created, for the benefit of the children, or issue, of persons in being at the death of a testator, posthumous children of those persons will take as beneficiaries; because issue not already born to the persons named must be born, if ever, during their lifetimes, or within the period of gestation afterwards.

And such posthumous children will be held to be issue, in the lifetime of their father, within the meaning of the statute which fixes a time beyond which accumulations cannot commence.

The time allowed, by statute, for an accumulation of rents and profits to commence in future, is the same as is allowed for a future estate in lands to vest in possession, viz. two lives in being. And although the period of gestation, or the time for a posthumous child to be born, added to its father's life, may, by *possibility,* be a longer term than any two specified lives, yet when the beneficiary, under a trust for such an accumulation, happens to be *en ventre sa mere,* at the death of the

Mason *v.* Jones.

father, the time that may elapse previous to the birth of such beneficiary should be disregarded.

The possibility of the birth of such beneficiary, under trusts of accumulation for the benefit of the issue or children of a person in being at the death of the testator, is not an objection to the validity of those trusts.

A child *en ventre sa mere* is to be considered *in esse*, for most purposes of property.

Courts of justice have sometimes felt themselves at liberty, in considering and giving effect to wills, to reject words which, if allowed to stand, would produce repugnant and inconsistent results. *Per* McCoun, J.

This principle applied to a clause of the will, in the present case.

In Equity. This was an appeal, by the plaintiff, from a decree of the assistant vice chancellor of the first circuit. The bill was filed by James Mason, one of the sons of the late John Mason of the city of New-York, deceased, against the executors and other persons interested in the estate of his father, for a construction of the last will and testament of the decedent. The will was executed on the 26th day of September, 1839, and was in the following words :

" In the name of God, Amen—I, John Mason, of the city of New-York, gentleman, being of a sound and disposing mind, memory, and understanding, do, in and by these presents, make, execute and publish, my last will and testament, as follows, that is to say :

" First, I order and direct all my just debts, funeral expenses, and testamentary charges, to be paid as soon after my decease as may be conveniently done.

" Second, I give, devise, and bequeath, unto my beloved daughter, Mary Jones, the wife of Isaac Jones, and to her heirs, executors, administrators, and assigns, forever, the one equal undivided eighth part of all my property and estate, both real and personal whatsoever.

" Third, I give, devise, and bequeath, unto my beloved daughter, Rebecca Jones, the widow of Isaac C. Jones, deceased, and to her heirs, executors, administrators, and assigns, forever, one other equal undivided eighth part of all my property and estate, both real and personal whatsoever.

" Fourth, I do give, devise, and bequeath, unto George Jones, the husband of my deceased beloved daughter Serena, and to

her children by him, and to their respective heirs, executors, administrators, and assigns, forever, one other equal undivided eighth part of all my property and estate, both real and personal whatsoever ;

"The share, estate, and interest of the said George Jones in the said last mentioned eighth part, to be the same, in right of his said deceased wife, as if she were now living and should survive me, to the end that he may not be prejudiced by her death before me, touching her share and portion in my estate and property, either real or personal, the said children taking, under this my will, their respective shares, estate, and interest, in the real estate of the said last mentioned eighth part only after the death of their said father, equally, or share and share alike.

"Fifth, I give, devise, and bequeath, unto my beloved daughter, Sarah Jones Hammersley, the wife of Andrew Gordon Hammersley, and to her heirs, executors, administrators, and assigns, forever, one other equal undivided eighth part of all my property and estate, both real and personal whatsoever.

"Sixth, The remaining one equal undivided half part of all my property and estate, both real and personal whatsoever, I give, devise, and bequeath, unto the said Isaac Jones, George Jones, and Andrew Gordon Hammersley, and the survivors and survivor of them, their and his heirs, executors, administrators, and assigns, forever, in trust, for the following uses and purposes, that is to say :

"To rent, invest, and improve the same, at their and his best discretion, and collect and receive the rents, issues, profits, interest, dividends, or other income, thereof, and by and out of such income, or so much thereof as may be necessary for that purpose, to pay the following annuities, that is to say : '

"To my beloved daughter, Helen Alston, the wife of Joseph Alston, of South Carolina, for her own separate use and benefit, and into her own hands, and upon her own receipt, or to her own written order, to be given by her from time to time as such payments shall be made, and not by way of anticipation, a clear annual annuity of three thousand dollars a year :

" Also, to my beloved son, John Mason, junior, a clear annual annuity of two thousand dollars a year :

" Also, to my beloved son, James Mason, a clear annual annuity of two thousand five hundred dollars a year :

" And also, to my beloved son, Henry Mason, a clear annual annuity of two thousand five hundred dollars a year :

" Each of the said four annuities to be paid in two equal instalments a year, at the end of every six calendar months, from and after my decease, and to be continued during the respective lifetimes of the before named four annuitants, with the exception of the said Helen Alston, whose annuity shall cease when and if she survive her said husband, and she shall thereupon become entitled,

" And I hereby, in that event, give, devise, and bequeath, to her and to her heirs, executors, administrators, and assigns forever, the one equal undivided fourth part of the said half part of my property and estate, both real and personal.

" But should her said husband survive her, then, from and after her decease, I hereby order and direct the said annuity of three thousand dollars a year, to be paid to him in like semi-annual instalments for and during the residue of his natural life.

" And upon the decease of the said Helen Alston, should she die in the lifetime of her said husband, I hereby give, devise, and bequeath the said last mentioned one equal undivided fourth part of the said half part of my property and estate, both real and personal, subject to the said annuity, to her surviving husband, to her child or children, or other issue, and his, her, or their respective heirs, executors, administrators, and assigns forever, share and share alike ; such other issue taking by representation and not *per capita.*

" And with regard to my said two sons, James Mason and Henry Mason, should they or either of them die leaving a widow surviving them or him, such widow or widows shall be entitled to, and I hereby give and bequeath to her or them respectively, the same annuity of two thousand five hundred dollars a year, to be paid to her or them respectively, in like semi-annual in-

stalments, during the residue of her or their several natural life or lives.

" And I do hereby give to the before named trustees, and the survivors and survivor of them, full discretionary power to increase the said annuities respectively, during the lifetimes of my said daughter, Helen Alston, and my said three sons, John Mason, junior, James Mason, and Henry Mason, but not after their respective deaths.

" And should the clear net income of the said trust fund exceed the said annuities, the surplus in regard to the three equal fourth parts thereof accruing after one month from my death, is to accumulate equally for the benefit of the children or other issue of the said Helen Alston, and James Mason and Henry Mason respectively, during their respective minorities, and to be paid to them respectively as they shall severally attain the age of twenty-one years, such children or other issue taking their respective shares thereof by representation and not *per capita.*

" And with regard to the said trust shares of the said Helen Alston, James Mason and Henry Mason, so long as they may severally be without issue living, the surplus of the said income thereof accruing as aforesaid from one month after my death, after satisfying the said annuities to them, or to the surviving husband of the said Helen Alston, and the surviving widows of the said James Mason and Henry Mason, shall be paid from time to time to the said Mary Jones, Rebecca Jones, George Jones, if he be living, or to his children by my said deceased daughter, if he be dead, the said Sarah Jones Hammersley, and the said Helen Alston, should her said husband be then deceased and she survive him, or to her issue if she and her said husband be both living, and she have issue living, and to the issue of either of my said sons, James Mason and Henry Mason, who may have issue, equally, or share and share alike, such issue in each instance taking by representation and not *per capita.*

" And upon the decease of my said son, John Mason, junior, who is unmarried, and from his bodily and mental infirmities

Mason v. Jones.

in all human probability never will be married, I give, devise, and bequeath the one equal fourth part of the said remaining half part of my property and estate both real and personal, together, in the meantime, that is to say, during his lifetime, and the surplus of income thereof, after satisfying the said annuity to him, to the several persons and for the several estates, and upon the several contingencies herein lastly above specified.

" And upon the deaths of the said James Mason and Henry Mason respectively, I give, devise, and bequeath the two equal fourth parts of the said remaining half part of my property and estate, both real and personal, to their respective issue, such issue taking share and share alike, by representation and not *per capita*, subject to the said annuities to the widows of my last named two sons, should such widows survive them.

" But should my said last named two sons, or either of them, die without leaving any issue them or him surviving, then I give, devise, and bequeath the said last mentioned two equal fourth parts or one equal fourth part of the said remaining half part of my said property and estate, both real and personal, as the case may be, subject to the said last mentioned annuities, to the said Mary Jones; Rebecca Jones; George Jones, if he be then living, or if then dead, to the children of my said daughter Serena; Helen Alston, if she shall have survived her said husband, and if not, then to her issue; the said Sarah Jones Hammersley; and the issue of either of my last mentioned two sons who may have left issue, equally, share and share alike, the issue or children in either case taking by representation and not *per capita*.

" Lastly, I do hereby nominate, constitute, and appoint the said Isaac Jones, George Jones, and Andrew Gordon Hammersley, executors, and my said two daughters, Mary Jones and Rebecca Jones, executrixes of this my last will and testament, hereby giving them power and authority at their discretion to sell and convey all or any part or parts of my real estate.

" And I hereby revoke every former will by me executed."

The testator died on the same day the will was executed,

Mason *v.* Jones.

leaving personal effects to the amount of five hundred and sixty-six thousand five hundred and thirty-eight dollars, and real estate worth about half a million of dollars. The testator left him surviving his four daughters, the said Mary Jones, Rebecca Jones, Sarah Jones Hammersley, and Helen Alston, and his three sons, the said John Mason, junior, Henry Mason, and the plaintiff, and his six grandchildren, George A. Jones, Arthur M. Jones, Serena Jones, Frances Jones, Rebecca M. Jones, and Margaret Jones, infant children of his said daughter Serena, by her said husband, George Jones, his only and sole heirs at law. At the time of the death of the testator, Henry Mason was an infant, under the age of twenty-one years, and George A. Jones, Arthur M. Jones, Serena Jones, Frances Jones, Rebecca M. Jones, and Margaret Jones, were, at the time of the death of the testator, and at the time of the filing of the bill in this cause, in March, 1840, also severally infants. The bill was filed against the three executors, the six children of the testator named in the will as being then alive, Joseph Alston and his infant son, the wife of Henry Mason, and his infant daughter, the wife of the plaintiff, and the six children of Serena Jones, the deceased daughter of the testator. The bill stated that the executors proved the will, and obtained letters testamentary thereon. That at the death of the testator a large portion of the real estate was demised, but the plaintiff was ignorant of the particulars, and required a discovery. That the devise of the testator, both as to his real and personal estate, was utterly null and void, and of no legal effect or validity, and that the plaintiff, upon the testator's death, became seised of one-eighth of the real estate, as tenant in common, and entitled to one-eighth of the rents of such as was demised. The plaintiff also alleged that the other heirs, or some of them, had received the whole rents, and that he had called on them for an account and payment thereof. The bill prayed that the devises and bequests of the will might be declared void, and the plaintiff's title established; and for an account of the rents received. Also, that the true construction of the will might be declared and determined by the court. The executors, with the parties

Mason v. Jones.

who took absolute vested interests under the will, put in answers, insisting on its validity, in every particular. The executors stated that, under the discretionary power in the will, they had increased the annuities to one-eighth of the net income. It appeared, upon the hearing, that since the commencement of the suit, the executors had reduced the annuities payable to the sons of Mrs. Alston to the sums specified in the will. The cause was heard before the assistant vice chancellor, upon pleadings and proofs; who made the decree therein which is the subject of the present appeal. For a statement of the case in the court below, and the opinion delivered by the assistant vice chancellor, see *Mason* v. *Mason's executors and others*, (2 *Sandford's Ch. Rep.* 432, 458.)

*James J. Ring*, for the appellant. I. The trust estate is void in its creation, because an absolute fee in possession thereof cannot be conveyed until after the expiration of more than two lives. (1.) The trust is to receive rents and profits. During its continuance and until all its purposes are fulfilled, the estate is inalienable. Neither the trustees, nor the *cestuis que trust*, can alienate. The disability to alienate is attached to the estate. (2.) By the express terms of the devise, each annuity is declared to be a charge upon the income of the whole trust estate, and not upon that of any particular portion. This purpose of the trust cannot be fulfilled until all the annuities are extinguished. (3.) Such was the intent of the testator. This is manifest by his charging upon the income of the whole trust estate the payment of unequal annuities, which may be rendered still more unequal by the unrestricted discretionary power conferred upon the trustees. This intent could only be carried into effect by declaring the whole income of the trust estate liable for the payment of each annuity as fixed by the testator, or as enlarged by the trustees. (4.) The subsequent provisions of the will as to the disposition of one-fourth upon the death of each annuitant, must be so construed as not to defeat the principal object which the testator had in creating the trust nor the payment of unequal annuities. Or,

they must be rejected as inconsistent with the clear and express devise previously made. Or, their inconsistency with the clear provisions previously declared renders it impossible to believe that the testator had any distinct conception of the nature or extent of the interests created by the will; in which case the whole trust estate is void. The latter view most recommends itself in consequence of so many other provisions which are incomprehensible, and because of the confusion and indistinctness which are stamped upon the whole will, and the fact that the first time the testator heard the will read was while he was in a dying condition. (5.) The undivided estate of the trustees in every part of the trust estate renders inalienable the whole trust estate, notwithstanding a devise over of one-fourth upon the death of each annuitant. It is physically impossible to alienate any specific part of the trust estate, so long as the trustees retain an undivided interest in every part of the estate which continues inalienable. (6.) Even if the trust estate may be regarded as divided into four equal shares, the alienation of each share may be suspended beyond two lives in being by reason of the continuance of the payment of the " *same annuity in the like semi-annual instalments*," to the surviving widow, who may be a person not in esse at the time of the death of the testator. The devise over of one-fourth, *subject to the said annuity*, &c. is, in terms and effect, a trust which renders the particular share inalienable until after the death of the widow, as it creates a life estate in the widow, of the same nature as that of the annuitants, which prevents an absolute estate in fee in possession until after her death.

II. The trust estate is void because created for purposes not authorized by the statute. (1.) The trust is to receive rents and profits, and its direction " to pay," does not comply with the statute which requires the trustees " to apply to the use of" the *cestui que trust*. (2.) In its spirit and object, it also fails to comply with the statute. The sole object of the statute was to provide for a weak and helpless or improvident person, by conferring a discretion upon the trustees either " to pay" or " to apply to the use of" such person, as the case should require.

Mason *v.* Jones.

In the present case all discretion is taken away by the peremptory order to pay; and the statute intended to abolish all such passive trusts. (3.) The statute declares one specific object and purpose of a trust to receive rents and profits, viz. "to apply *them* to the use of *any person* during the life of such person." In the present case, the direction to pay a part to one person, and to accumulate the surplus upon one contingency, and to pay over the surplus to third persons upon another contingency, which surplus may be continually varying in amount upon another contingency, and afterwards to pay the surplus to the annuitants according to the discretion of the trustees, creates a series of shifting, springing and contingent interests and trusts, which the statute never intended to authorize, under the third subdivision of the 55th section. This objectionable feature in the purpose of the trust is aggravated by the fact that George Jones, who is directly interested as a *cestui que trust*, may, by the death of his co-trustees, become sole trustee for his own benefit, which cannot be regarded as a legal estate, because it *may* shift back again for the benefit of the annuitants.

III. The trust for accumulation is void. (1.) It is to commence at the expiration of one month, a period of time not permitted by the statute. (2.) It is for the benefit of *issue* unborn and remote, and not for any designated minors, and is to continue during the lifetime of the annuitants, and not during the minority of the persons benefitted. (3.) It is unintelligible; so as to render it impossible to determine what interests arise under it.

IV. If the trust estate fails, so as not to be carried into effect as created by the testator, this court cannot model the will, or make a new one, for the purpose of accomplishing any supposed or imaginary intent.

V. The whole will must be declared void, because so much of it is inoperative, that to permit the rest to stand would in effect be to make a new will for the testator, doing flagrant injustice to one half of his children, and directly in conflict with

his expressed intent as to the equality of the distribution of his estate among all his children.

VI. Or, if the trust estate be declared void, the three children, Rebecca, Mary, and Sarah, must be put to their election as heirs at law, and the provisions as to George Jones must be declared void, as unintelligible, for the benefit of the children of Serena ; who are equitably entitled to the share of their mother.

*M. S. Bidwell & D. Lord, Jun.* for the respondents. I. The estate is divided into four eighth parts, given by way of direct estate ; and four by way of trust estates. The shares given in trust are distinctly and separately appropriated, one to each of the children named as *cestuis que trust* and their issue, &c. The trust to improve the property, to receive the income and to pay over the same to the annuitants and donees of the surplus, is valid as a mode of disposition. (1 *R. S.* 729, §§ 56, 55, *subd.* 3. *Kane* v. *Gott,* 24 *Wend. Rep.* 641.)

II. The trust for Helen, (Mrs. Alston,) is to pay her an annuity of $3000 during the joint life of her and her husband ; to accumulate the surplus during the minority of her children, to pay it to them on their attaining full age. It is valid. (1 *R. S.* 729, §§ 56, 55, *subd.* 3. *Id.* 723, §§ 15, 17. *Id.* 726, § 37, *subd.* 2.) The trust during the time she might be without issue, to pay to other persons designated, being dependent on the life of Mrs. Alston, is unobjectionable. (1 *R. S.* 723, 726.) The provision in case of her husband's surviving, to pay him the annuity for his life, if it requires the estate to continue in the trustees for his life, is nevertheless unobjectionable. It is but a second life in being, and the remainder in the issue is vested on the mother's death. (1 *R. S.* 723.) But it is a new charge on a legal remainder, given to her children. (*Bradley* v. *Amidon,* 10 *Paige,* 236.) The gift of the remainder in fee, as a legal estate after the death of Mrs. Alston, if she survived her husband, or on her death, if she did not survive him, was valid, vesting the remainders in her children, on their birth

Mason v. Jones.

respectively and during her life. This is clearly unobjec-
tionable.

III. The trust for James Mason is to pay him an annuity
of $2500 per annum for life, the surplus of the income of one-
eighth over the annuity to his issue to accumulate until the
issue come of age, and to be then paid to them, was valid.
The trust while he should be without issue being limited to his
life, is unobjectionable. The gift of the remainder in fee, on
his death to his issue, subject to the annuity to his widow
surviving, is valid, vesting remainders in his issue as they are
born respectively. It terminated the trust. The gift, on his
death without issue, to Mary, Rebecca, George, (or his children,)
Helen, (or her issue,) Sarah, and the issue of Henry, by repre-
sentation, is a limitation not beyond one life in being; and is
a valid, contingent remainder. The annuity to the wife of
James is not by way of a trust to be performed by the execu-
tors, but a charge directly upon the legal vested remainders,
taking effect on his death is valid. (*Bradley* v. *Amidon*, 10
*Paige*, 236.)

IV. The interest of Henry Mason and his wife and children,
&c. stands in all respects like that of James.

V. The trust to pay John an annuity of $2000 *per annum*,
is valid. The gift on his death, of the eighth, and of the surplus
over the annuity in the meantime, during his life, to Mary,
Rebecca, George, (or his children,) Sarah, Helen, (or her issue,)
the issue of James and of Henry, being a remainder to take
effect on a single life, is clearly valid; vesting on the testator's
death and on the birth of the issue defined. Although there
is a confusion of words in this clause, the meaning is both clear
and unambiguous. There is a clear intent to give (1.) A re-
mainder in fee on the death of John. (2.) The surplus of in-
come in the meantime during his life. (3.) The objects of the
gift are clearly defined, and the same persons for both.

VI. The discretion to the executors is wholly unobjectionable
in law, it applying severally to each share put in trust, and
terminating with the life of each of Mr. Mason's children.

Mason v. Jones.

*By the Court,* McCoun, J. The leading question to be considered in this case, arises upon the sixth devising clause of the will. It is this: Whether the trustees take one half of the estate as one entire gift for the purpose of a common fund to be made up of income, out of which to pay the four several annuities; or whether it is to be understood as a devise of half the estate in shares, thereby creating several trust funds for the payment of the respective annuities, each annuity being payable out of a distinct fourth part of the income.

If the former was intended by the testator, and such be the design of the will, then the devise is clearly void; because the trust renders the property inalienable for a longer period than is allowed by law; but if the latter is the true meaning of the will, (and the meaning is to be gathered from the whole instrument,) the objection on the score of an undue suspension of absolute ownership or of the power of alienation, entirely vanishes.

It was certainly as competent for the testator to devise this half of his property to trustees in shares, as it was for him to devise the other half in distinct undivided parts free from any trust; and had the draftsman, in framing the devising clause in question, added the words "in four equal shares," or, in the direction for the payment of annuities, had he said "out of the income of the respective shares," or employed words of similar import in that immediate connection, I apprehend there would have been no question of this sort. It would have been too clear for a doubt as to its being a devise in shares. But though such words are wanting here, yet are they not supplied in the subsequent parts of the instrument? It seems to me they are, and that the subsequent provisions show clearly enough an intention to devise this half of the property in four distinct and equal shares, as well for the sake of trusts to be executed, as for the sake of limitations over after the trusts shall have ceased.

An evidence of such intention is to be found in the direction that upon Helen Alston surviving her husband, her annuity is to cease and she is to take " the one equal undivided fourth

part of the property," absolutely.    The same share, under the designation of " the said last mentioned one equal undivided fourth part," &c. is given over to her issue in the event of her death leaving her husband surviving.

And again : In the accumulations of surplus income, " three equal fourth parts thereof" are mentioned to which this direction of the will applies, and these are the shares of Helen, James, and Henry, whose issue respectively are intended to be benefitted by the accumulations.    And in the next paragraph the will is still more explicit on this point, using this language : " And with regard to the said *trust shares* of the said Helen, James, and Henry, so long as they may *severally* be without issue living, the surplus of the said income *thereof*," that is, of those three shares, are to be paid over to persons in esse, and not to await the birth of issue of the three first takers.

Then again ; another *equal fourth part* of this half of the property is disposed of on the death of John, together " with the surplus of income thereof," after satisfying the annuity to him. This clause strongly indicates that the testator himself understood the will as setting apart a one-fourth of the half devised to the trustees, for his son John, out of the income of which fourth, and not out of the income of the entire half as a common fund, John's annuity is payable ; for it is the surplus income of that one-fourth, as a distinct share, and as a fund by itself, that is given over, with the principal, at his death.    So, likewise, upon the death of James and Henry respectively, it is equal fourth parts that are given over to their *respective issue,* or in default of issue surviving, then to others.

These directions of the will, which have reference to the same undivided half of the property devised in trust, show very clearly that the testator intended the trustees to take and hold the property thus devised, in four equal undivided shares, and each share under a separate trust.    Even if the will is capable of receiving a different interpretation for the want of words of severance in the immediate devising clause, yet when the whole is looked at, it is not perceived that any violence is done to its language, or to the general import of the instrument, by adopt-

ing this as the preferable meaning. The court is bound by that familiar principle which prevails both at law and in equity, that where a deed or a will admits of a twofold construction, one of which would render it void, and the other would uphold it, to give it that construction which will leave it effectual in law.

An argument has been urged against considering the trust as a trust of shares, because of the unequal amounts of the annuities, and of the discretionary power of the trustees to increase one or more of them, so as not only to produce a still greater inequality, but to enhance the amount of one or two, beyond equal fourths of the income, so that they could not be paid except by considering the income as a fund in gross, and not held in shares.

If, from these circumstances, it followed that the exercise of the power to increase annuities would necessarily prevent the payment of all, except out of a common fund, however small or partial the increase might be, then it would be an evidence of the testator's intention to place this half of his property under one general trust. But the facts in relation to the annual income, and the testator's knowledge of the amount, do not impose the necessity of inferring such an intention. The annual rents of the real estate, at the testator's death, were about sixteen thousand dollars. His personal property is inventoried at five hundred and sixty-six thousand dollars. This, at a moderate rate of interest, added to the rents, will form a clear net annual revenue of at least forty thousand dollars. Assuming this to be so, (and there would seem to be nothing unreasonable in the assumption,) each annuity might be increased to five thousand dollars, and still be paid out of separate shares of the income.

The testator well knew the amount of his income, and what the estate, in all probability, would continue to yield; and knowing this, he might well authorize an increase of the annuities; and it is difficult to believe that in conferring the power, although it is declared to be " a full discretionary power," he had the remotest idea or intention of the trustees increasing any

Mason v. Jones.

one of the annuities so that it should exceed a fourth part of the net income of the property devised in trust.   There is room enough for the exercise of the power without its going beyond that limit ; and if the trustees should ever attempt to exceed it, there would be, within the equitable jurisdiction of this court, a power, as I have no doubt there would be a duty, to restrain them.

The testator, indeed, contemplated that there would be a *surplus* of income after paying the annuities, and a surplus not depending on the trustees' omission to increase the annuities, but a surplus even if increased ; for his directions to accumulate the surplus in respect to three shares, or three fourth parts of the income, are general.   In giving these directions he speaks of the surplus " of *three equal fourth parts*" of the net income, and calls these three fourths, the " *trust* shares" of Helen, James, and Henry.   Thus showing that he had distinct shares in his mind, and that the surplus of such shares of income, was still the subject of his concern, though he had given to the trustees a power by which the surplus might be diminished, and perhaps entirely absorbed in the payment of annuities ; but not necessarily showing that one annuity, for example, might be so increased as to require more than one such equal share of the income to satisfy it, and thus to do away with all idea of separate funds.

Taking, then, the devise to the trustees, of one half of the property, to be a devise in shares upon separate trusts, the next question is upon the *duration* of the trusts, and the nature of the *limitations* over, whether they unduly suspend the power of alienation as to either or any of the shares.

I shall consider them in their order.   The first is a trust for Helen Alston, viz. to pay her a clear annuity of $3000, in two equal instalments, at the end of every six months, from the death of the testator so long as she remains *covert*, and no longer ; for her annuity is to cease when, and if, she survives her husband, Joseph Alston.   And in that event, the one equal undivided fourth of the property devised to the trustees vests in her absolutely.   And in the event of her death in the lifetime

of her husband, then the same fourth part goes over to her *child*, or children, or other issue, absolutely, in fee, but subject nevertheless to the annuity to her husband, the will having directed the annuity of $3000 to be paid to him during the residue of his natural life, in the event of his surviving her. The meaning of the will in respect to this share is very plain. The trust is to cease upon the happening of either of the two events, *discoverture* by the death of her husband, or her own death, her husband surviving. In the latter case, the annuity will remain to be paid, not however by the trustees, but by the remainder-men, who take subject to the annuity, as a charge or incumbrance upon the property in their hands. Hence it is a trust which cannot endure beyond the life of one person in being, Mrs. Alston, and may terminate sooner.

But if the annuity to the surviving husband is to be paid by the trustees, under a continuing trust for that purpose, it is even then a trust but for two designated lives in being, and is therefore unobjectionable. The second is a trust for the testator's son, John, to pay him an annuity of $2000 in like half yearly payments. This annuity is not to be continued to or for the benefit of any other person after John's death; and upon his death the whole of the trust share out of which the annuity is payable, is given over, " together with the surplus income thereof," to other persons, discharged of the trust. There is almost an unintelligibleness in the words as they stand in this clause of the will, by which the last mentioned share, with its surplus of income, is limited over on the death of John; but by transposing the words, "with the surplus of income thereof," and placing them next after "together," and before the words "in the meantime," all obscurity about that part of the sentence is removed. Words may be transposed, and changed, when necessary, in order to get at the correct meaning. (2 *Roper on Leg.* 321.) There may be some questions to be considered hereafter as "to the several persons, and for the several estates, and upon the several contingencies," to which this limitation or gift over refers.

Next is the trust for James, and the like for Henry, viz. to

pay each of them an annuity of $2500 in half yearly instalments, during their respective lifetimes.   As in the case of the daughter Helen's annuity, so here, on the death of James or Henry, leaving a widow, the annuity of each is to be continued to his widow during her life.   But is the trust to continue ?   We have seen in Helen's case, that the trust will cease upon her husband's death, she surviving, or upon the happening of her own death, he surviving her.   In regard to John's share, the trust will cease upon his death ; so, as to the share of James, it is equally clear the trust is to continue no longer than during his life ; and Henry's stands upon precisely the same footing.   The property appropriated in shares for the purpose of paying their respective annuities, is tied up by a trust only for *one life*, that of a son, in respect to each share. It is true, that if the trusts of James and Henry's shares were to continue after their deaths, for the sake of their widows' annuities, it would be a well founded objection that they were trusts for two lives each, one of which might not be a life in being when this will took effect ; for, though James was then married, yet the will does not give the annuity to his present wife *nominatim* if she survives ; and she may not be the widow to claim and receive the annuity, but some future wife, perhaps not yet born.   And as Henry was younger, and unmarried, there might be a still greater uncertainty as to the person, and whether in being, who would stand in that relation to him.   But as the trusts of James and Henry's shares, like the others, will cease at the expiration of one life, and as the property is then to pass under the limitation over, provided they are effectual for that purpose, subject only to widows' annuities, as a charge upon the remainder, there is no difficulty, and can be none hereafter, about the absolute ownership or power of alienation being suspended ; because mere *charges* on an estate have not that effect.

Another point has been made as to the *purposes* of the trust, which is equally applicable, whether the will be considered as creating *several trusts* or only *one*.   The objection is, that the statute does not allow trusts to be created for such purposes as

are here intended. A distinction exists, in this respect, between a trust of personal property and its income, and a trust of the rents and profits of real estate; the latter only being the subject of express regulation by the statute of uses and trusts. (*See in Gott* v. *Cook*, 7 *Paige*, 534, *and* 24 *Wend.* 661.) But as both species of property are here thrown together, under the same trusts, I shall test the purposes and objects of the trusts by the statute. In the first place, it is well settled that the payment of *annuities* is a legitimate purpose of a trust. (*Depeyster* v. *Clendining*, 8 *Paige*, 275, *and* 26 *Wend.* 21.) So it is equally well settled, that the directions " to pay " to the annuitants, instead of using the words "to apply to the use of," is just as good. This precise point arose and was considered at length by the chancellor, in *Gott* v. *Cook*, (7 *Paige*, 521.) There he held that a trust expressed as this is, was within the letter as well as within the spirit of the statute. His decision having been affirmed on appeal, (24 *Wend.* 641,) puts this question at rest. The opinion expressed by the chancellor as to the duty of trustees in executing a trust " to pay," meets another branch of the objection; for although the terms of the trust may seem to contain an unqualified direction " to pay over," money to the beneficiary, yet the trustee is to exercise a discretion on that subject, and he is not to place money, or whatever else he may furnish, directly in the hands of a beneficiary, who from his mental or moral condition, is incapable of using it beneficially to himself. Such a proceeding will be accounted a *breach* of duty on the part of the trustee, rather than a *compliance* with the terms of the trust. (7 *Paige*, 538.)

Next, as to the directions of this will in respect to the accumulations of surplus. It is contended that these are void. One of the express trusts authorized by the statute of uses and trusts, is to recover the *rents* and *profits* of *lands*, and to accumulate the same for the *purposes* and within the limits prescribed in the previous article of the statute relating to estates; and there we have the *cases* specified in which, and the *purposes* for which accumulations of rents and profits of real estate may be made. (1 *R. S.* 726, §§ 37, 38.) Accumulations

of the income of personal property are placed on the same foot-ing, and are governed by the same statutory rules. (1 *R. S.* 773, § 3.) These rules are, 1. That an accumulation, in order to be valid, must be for the benefit of *minors,* and it must terminate at the expiration of minority. 2. If the accu-mulation is directed to commence on the creation of the estate, or on the taking effect of the instrument by which it is directed, it must be for the benefit of one or more *minors then* in being. 3. If the accumulation is directed to commence at a future period, that is to say, at a time subsequent to the creation of the estate, or the taking effect of the instrument by which it is directed, the commencement must be *within the time* allowed for the vesting of future estates in lands, or, which is the same thing, for the vesting of the absolute ownership of personal prop-perty ; that is, within the running of two lives in being. And 4. Where it is to commence at such future period, it must com-mence at *some time* during the *minority* of the persons intended to be benefitted.

Now in respect to the surplus income of the three shares set apart for Helen, James and Henry, after paying their several annuities, the will directs that such *surplus* accruing after one month from the testator's death, is to accumulate equally for the benefit of the children or *other issue* of Helen, James and Henry, respectively, during their respective minorities, and to be paid to them respectively as they shall severally attain the age of twenty-one years ; such children or *other issue* taking their *respective shares* thereof by representation and not *per capita.* Here, in some respects, is such a direction for accu-mulating rents and income as the law allows. Minors only are to be benefitted, and the accumulations are to terminate when, and as, such minors severally attain full age. But when are the accumulations to commence ? One month from the death of the testator is fixed by the will as the period from which the surplus to be accumulated is to accrue. This is a good appointment of a *subsequent* or *future* time for the accu-mulation to commence for the benefit of Helen's child, born before the death of the testator, and then, and still, a minor,

Mason *v.* Jones.

and would have been an equally good and binding appointment as to any other child or children of Helen, James and Henry, who had happened to be born at any time within a month after the death of the testator. It does not appear, however, that any were born during that short interval, and the child of Helen is therefore the only one whose benefit of accumulation is to date from the expiration of the month, instead of dating from the time of the testator's death, as it might have done. If Helen should have further issue, they will be entitled to participate with the child she now has, in the benefit of the accumulation going on from the expiration of the month. But the period of one month from which the surplus income is to accrue as here mentioned, is of no consequence as to children of James and Henry not born at that time; for by the terms of the will no accumulation could or can commence for the benefit of the children of either, until a child or children is or shall be born to them. The language of the will is that " so long as they may severally be without issue living, the surplus of the said income, &c." instead of accumulating in the hands of the trustees, is to be paid over from time to time to the other persons therein named. When issue was born to Henry, therefore, the accumulation, according to the will, commenced for the benefit of his children. So, whenever a child shall be born to James, he as yet having no issue, as appears from the pleadings in the cause, (for none is spoken of, or made a party to the suit, though his wife is,) the accumulation of the surplus income of his share will commence, according to the directions of the will, for the benefit of his issue. It is made a question, however, whether the appointment by this will of the birth of issue to James and Henry, respectively, as the period or time for the commencement of the accumulations for the benefit of such issue, (neither of them having issue at the time of the testator's death, nor within the one month thereafter,) is such an appointment for the commencement as the statute allows to be made. One objection would seem to be, the want of two designated lives in being, within which the accumulations must commence by the birth of subsequent issue; but this objection

is removed, if from the will it is made to appear that there is one designated life within, or at the expiration of which, the accumulations must commence by the birth of issue, or not commence at all.   Is that the case here ?   James and Henry, sons of the testator, are named as the persons whose respective issue, or children, are to be benefitted by the intended accumulations.   Issue not already born to them, must be born, if ever, within their lifetimes, or within the period of gestation afterwards.   Suppose, then, the issue to be born happen to be *posthumous*, which is possible, still, such issue would answer the description in the will of issue or children of these sons, and of such issue, too, who are to be benefitted by the accumulations ; but would they be issue in the lifetime of the father, within the meaning of the statute which fixes a time beyond which accumulations cannot commence ?   The statute says they are not to commence beyond the period allowed for the vesting of future estates in land, or for the suspension of the absolute ownership of personal property ; that is, two lives in being.   But future estates may be limited to vest in possession sooner, or at any other time, which by no possibility can exceed two specified lives.   Here it may be said that the period of gestation, or the time for a posthumous child to be born, added to its father's life, may, by *possibility*, be a longer term than any two specified lives.   I think, however, our statutes have cured this difficulty, and we are at liberty to hold that the time required for a posthumous child to be born, is not to be taken into account. Posthumous children are placed on the same footing, with respect to property devised, and to property coming by descent, as other children of the same parent.   (2 *R. S.* 65, § 49.   1 *Id.* 754, § 18.)   This is upon the principle that a child *en ventre sa mere*, shall be considered *in esse*, for most purposes of property.   (*See Clarke* v. *Blake*, 1 *Bro. C. C.* 320.)   In the same case at law, (2 *H. Black. R.* 399,) Eyre, C. J., held that an infant *en ventre sa mere*, who, by the order and course of nature is *living*, comes clearly within the description, of a child living at the time of its father's decease.   At common law, a remainder must vest *eo instanti*, the particular estate is deter

mined, or it is void; but under the remedial statute of 10 and 11 William III, ch. 16, from which the provisions of our statutes above referred to, are to some extent borrowed, posthumous children take in remainder, notwithstanding the interval, and notwithstanding there happen to be no estate limited to trustees after the decease of the father, to preserve the contingent remainder to such after-born children until they are born, or come *in esse* to receive the estate. (2 *Prest. Touch.* 235, *n.* 20.) And in *Basset* v. *Basset,* (3 *Atk.* 203,) Lord Hardwicke determined under that statute, that a posthumous child, born after the rent day following his father's death, was entitled to the previous profits of the land, from the time of such death, as well as to the land itself. Our statute relating to the creation and division of estates, contains the same principle. "Where a future estate shall be limited to heirs, or issue, or children, posthumous children shall be entitled to take in the same manner *as if living* at the *death* of their parent." (1 *R. S.* 725, § 30.) Here, then, is a complete annihilation, in *law,* of the time that may elapse between the death of a father and the birth of a previously begotten child. The instant such child is born, it is made to step back to the end of the father's life, there to take its stand and become clothed with all the rights of property previously conferred. The time allowed for an accumulation to commence in *future,* is the same as is allowed for a future estate in lands to vest in possession; and when the beneficiary, under a trust for such an accumulation, happens to be *en ventre sa mere,* at the death of the father, the same reason exists why the time that may elapse for his birth should be disregarded. The *possibility* of such an occurrence, under the trusts for accumulation for the benefit of the issue or children of James and Henry, as declared in this will, cannot therefore, in my opinion, be allowed as an objection to the validity of those trusts. The accumulations under them must commence, if ever, within, or at the expiration of one life, and this will necessarily be *during the minority* of the persons to be benefitted; and according to the will the accumulation is to terminate at the expiration of minority. Hence the require-

ments of the statute, allowing accumulations, are complied with.

It has been suggested, in argument, whether during the one month from the death of the testator, when no accumulation could commence, the power of alienation was not suspended, and if so, being for a *term*, and not for *lives*, it was an undue suspension. The trusts, however, for the payment of the annuities, were not suspended. They commenced at the death of the testator. The title vested immediately in the trustees, for the purposes of those trusts, and the annuities would absorb the rents and income of that month, so that no surplus, even for that period, would remain undisposed of by the will.

I now proceed to examine, a little more particularly, the limitations over of the trust property, and its increase, in order to ascertain whether there is any thing in them to impair the otherwise legal effect of the will. If they confer absolute rights of property in possession, however entangled the limitations may appear, or difficult it may be at this time to point out and identify the persons who will be entitled under them, yet the devise over may be good. Even should there be a failure of persons, or events, provided for, it may not invalidate the will. The first thing I shall notice is the gift of the surplus income of the " trust shares " of Helen, James and Henry, " so long as they may severally be without issue living," or in other words, until the time arrives for the accumulations to commence by the birth of such *issue*, the surplus income of these shares is directed to be paid from time to time to individuals therein named, and to classes of persons described as children or *issue* of others. The trustees are the persons who are to make the distribution, for it is some portions of the money they are to receive under the trusts which are to be divided and paid over. We have seen that the trusts to receive and pay over are valid. The recipients of these surplus moneys are *cestuis que trust* for the time being. They take their respective shares, when paid, as absolutely as the annuitants take their annuities. No condition, limitation or trust is attached to the receipt of the money by either of the donees, to qualify their absolute ownership.

There may be some uncertainty as to the persons who will be entitled to receive some of the shares at some of the times, owing to the happening of events which may shift the rights from one to another. Thus, for instance, it is a matter of uncertainty whether George Jones will take the share given to him, or whether his children by his late wife will take it, substitutionally, in the event of his death. So with Mrs. Alston : she is to be the recipient provided she becomes discovert by the death of her husband ; but while she and her husband both live, her issue are to take. The event of her death, leaving her husband surviving, seems not provided for ; but the effect of this omission is not such as to impair the validity of the limitation, as far as it goes. What will become of that share, in the event last mentioned, is a question which it is not now necessary to consider.

In this distribution of surplus income the will also gives shares "to the issue of either of the sons, James and Henry, who may have issue." This is easily understood. For example, if James should have issue and Henry none, it would be the surplus income of Henry's share that would be distributable so long as he remained childless, and James' child or children would participate in such distribution. And so *vice versa*, Henry leaving children and James none, it is the surplus income of James' share that is now distributable, and Henry's children come in for one equal part between them, while the two Mrs. Jones are each entitled to a part, Mrs. Hammersley to a part, and Mrs. Alston's child, as she is situated, to another equal part.

Next, as to the one-fourth share of the property devised in trust for the testator's son John. Upon John's decease this share, together with the surplus of income thereof after satisfying the annuity to him, is given "to the several *persons*, and for the several *estates*, and upon the several contingencies, herein lastly above specified." This is a limitation over of a remainder upon the determination of John's equitable life estate, or in other words, of the trustees' legal estate held for John's benefit during his life. First, then, who are the "*several persons*" to whom this remainder and its surplus income are devised ?

Mason *v.* Jones.

They are the same persons and classes of persons just spoken of, to whom the surplus income of any of the other three fourths is given by the next preceding clause of the will.   2d. For what *"several estates"* do they take ?   The answer is, absolute estates or interests, as tenants in common—children or issue taking by representation and not *per capita*, as declared in the will.   3d. Upon what "several contingencies?"   One contingency, as to one share, is that George Jones is to take it if he is living at the time for it to vest in possession, (i. e. at John's death,) and if not then living, his children by his late wife are to take.   As to another share, the contingency is of Mrs. Alston becoming discovert by the death of her husband and being still living, when she will be entitled ; and if she remains feme covert and have issue living, such issue to take.   And in respect of James and Henry, the contingencies are of their having issue to take other shares.   Now with regard to the shares in John's one-fourth, which are given to the two Mrs. Jones and Mrs Hammersley, there is no contingency in the limitations over. They each take a vested remainder, and their title and ownership is at once absolute.   The limitations of the other shares to the other persons create contingent remainders, owing not to any uncertainty in the event on which they are limited to take effect, viz. the death of John, but to the uncertainty of the persons who are to take.   Whilst they remain uncertain, the remainders to them are contingent.   (1 *R. S.* 723, § 13.)   This uncertainty, however, can last no longer than during John's lifetime.   The moment he dies, it will be ascertained from events that have transpired, who and which are the persons in whom the title and estate in remainder will vest in possession. It will then be known whether it will be in George Jones or his children—whether in Mrs. Alston or her child or other additional issue—and whether James and Henry will have issue living in whom likewise shares will vest.   Whichsoever of them is then in a situation to take, will take absolute ownerships ; and if there should be a failure of devisees there will be heirs at law in whom the fee will vest.   In no event will the power of alienation be any longer suspended.   Next in order are the

limitations over of the two equal fourth parts upon the deaths of James and Henry respectively. Their respective *issue* are to take these shares in fee, taking by representation and not *per capita*, subject to the charge of a widow's annuity upon each share, as before stated. But should James and Henry, " or either of them, die without leaving issue them or him surviving," then these two equal fourth parts, or one equal fourth part, as the case may be, are given and devised subject to the last mentioned annuities, to the same persons and in the same manner as the remainder of John's share is previously given, with the difference of a single word as respects the *issue* of the two sons. In the previous clause the words are, " and to the issue of either of my sons James and Henry who may have issue." In this clause the words are, " and the issue of either of my last mentioned two sons who may have *left* issue." The word " *left*," as used here, would seem to imply the death of a son and the survivorship of his issue, before such issue are permitted to take. A manifest difference is thus made in the vesting of the remainder in the issue of a son, under this limitation, and under the previous limitation of another share of the estate to take effect upon the death of John. No good reason can be assigned why any such difference should be made in the two cases ; nor why, in this instance and not in the other, the testator should have been minded to postpone the vesting. It would indeed seem contrary to the general plan of his will, in relation to one half of the estate, for him to do so. I cannot but think, therefore, that this word " *left*" has unfortunately, from oversight, obtained a place in this will, without its being intended to have the effect it would appear to have. What is that effect ? The most that can be said of it is, that the issue of a son, to take under this limitation, must be the issue who has or have *survived* his or their father ; and then it follows, that there may be a period of time to elapse after the death of one of the sons, leaving no issue, before the issue of the other son can take. For example ; suppose James dies without issue, and Henry is still living having issue ; Henry's issue, though appointed to take, in common with other persons, the remain-

Mason *v*. Jones.

der in one fourth upon the death of James, yet cannot take in the lifetime of Henry their father; for till his death, they are not issue which he has left. Here then is an interval of time, a possible event, which postpones and suspends the vesting of a share in this remainder until the happening of another event besides that upon which it is in the first instance limited to take effect, viz. the death of James without issue. All the shares in the remainder limited to the other persons vest in possession at that time; yet the share to the issue of the other son, Henry, is to remain contingent and uncertain as to the persons to take, until his death shall determine who are the *issue he leaves.* In the meantime, the benefit of the share thus kept in suspense is given to nobody—it is under no trust. Cases have occurred in which courts of justice have felt themselves at liberty, in considering and giving effect to wills, to reject words which, if allowed to stand, produce repugnant and inconsistent results. (2 *Jarman's Powell on Dev.* 9, *and cases there cited.*) I am strongly inclined to think the present is such a case, and that we are warranted in discarding the word in question; and then this part of the will will be in perfect harmony with the previous limitations. But whether it be rejected or not, it has not the effect of suspending the absolute ownership and power of alienation of any part of the property beyond the period of two lives in being at the death of the testator. The two lives are those of his sons James and Henry. Under the limitation to the issue of either of these sons who may have *left* issue, the remainder will necessarily vest, if it vests at all, in such issue, at the time of the death of the longest liver of the two. Upon the whole, therefore, if the views taken of the previous devises and provisions of this will are correct, there is no cause in law for interfering with any of the trusts or limitations it contains. And this being the opinion of the court, the decree appealed from is affirmed, with costs.