## Ethelbert D. Rothwell and Millard F. Dunlap v. William H. Luken.

1. SALES—*When a Contract is a Sale.*—If a contract is intended by the parties to it to result in transferring for a price from one of the parties (the vendor) to the other (the vendee), a chattel in which the vendee has no previous property, it is a contract for the sale of the chattel.

2. SAME—*When a Contract is Not a Sale.*—Where a person makes a contract with a carriage maker for the making of a peculiar style of carriage not generally manufactured for his trade, or kept in stock, and it is ordered in view of the reputation and skill of the maker, such contract is not one of hiring and service, but is a contract of sale.

Replevin.—Appeal from the Circuit Court of Morgan County; the Hon. GEORGE W. HERDMAN, Judge, presiding. Heard in this court at the November term, 1894. Reversed and remanded. Opinion filed June 3, 1895.

OWEN P. THOMPSON, attorney for appellants.

JOHN A. BELLATTI, attorney for appellee.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

This was an action of replevin brought by appellee against appellants on June 2, 1892, for a two-horse, two-seated, extension top carriage. The only contest was upon the question of property in the plaintiff, in which he prevailed, and there is little or no room for doubt, upon the evidence, as to the controlling facts by which, in the view of the court as

indicated by the instructions given to the jury, that issue was to be found.

For several years next before May 25, 1892, the business of manufacturing carriages and buggies at Jacksonville, was carried on in the name of Mrs. Magdalena Hellenthal, by Michael Hellenthal, her husband and as her agent, though the sign on the factory was "M. Hellenthal."

In the fall of 1891, appellee, a farmer near Jacksonville, desiring a carriage of peculiar form, went to the factory to look for such, but found none. Upon his telling what style he wanted—the peculiarity being in the width of the seats and height of the wheels—Hellenthal said he could make it for $250, which appellant thought too much and left without giving an order. Shortly afterward Hellenthal came out to his house, and after referring to their previous interview, proposed to appellee to build for him the carriage he desired for $225, if he would advance the sum of $200 and give him the winter in which to do it. Appellee had been acquainted with him for some time and knew his reputation as a carriage maker was excellent, but did not know that he was carrying on the business as agent for his wife. To be sure of getting the benefit of his judgment and skill, he suggested the possibility of some cause that might prevent it and leave him without security for the money advanced. Hellenthal then offered to give him his note for $200, as security for his performance, which appellee took and gave his check for the amount. Hellenthal then proceeded to build the carriage. Appellee saw it from time to time as the work progressed, and all of the employes engaged upon it understood it was being built for him. In the latter part of April next following Hellenthal told him it was about done, and appellee then paid him the balance; but on account of the weather did not wish to take it out of the shop at that time, and it remained to some extent unfinished until after he replevied it.

It appears that Mrs. Hellenthal had become indebted to the appellant Dunlap in a sum amounting, on the 25th of May, 1892, to $1,776.25, which was secured by a mortgage,

not produced on the trial, of chattels not particularly shown, but which may be supposed from the evidence to have consisted of the carriages, material and tools, or some part thereof, in the factory. Dunlap became anxious about his debt, and threatened to take possession and sell under his mortgage. But fearing that by such a proceeding the property, from its condition—largely unfinished work—would be sacrificed and fail to pay his claim, suggested to his friend, the appellant Rothwell, that if by arrangement with the Hellenthals he could get a bill of sale of the whole concern in consideration of his payment of the mortgage debt, he, Dunlap, would throw off $110 of it, and Rothwell, by finish-ing up the work, could get enough out of it to reimburse himself and pay him for his trouble.

On the 25th of May Rothwell obtained from Mrs. Hellenthal a bill of sale purporting to transfer to him certain carriages of different styles and respectively numbered, some parts of carriages and certain tools designated, together with " all other tools, trimmings, and goods and chattels of every description " in the carriage manufactory. On receiving it he went to the factory, turned over the keys to Mr. Benwood, who had been employed there as a carriage trimmer, and directed him to take possession of the stock as his agent, which he did. The signs on the building bearing Hellenthal's name were painted out, and one bearing that of Rothwell was nailed to the stair door leading to the repository. At that time the buggy in controversy was there, on the third floor, with several other jobs, finished and unfinished.

About a week thereafter, June 2d, appellee surrendered to Hellenthal his note and told him he called for the buggy; and on the same day brought this suit. The buggy was then in Dunlap's barn, for Rothwell, who claimed under the bill of sale.

We have said that the only issue was whether it was then the property of appellee, upon which the burden of proof was on him. Whether the bill of sale included this partic-ular buggy or not was not made a question, nor was it ma-

Rothwell v. Luken.

terial in this case. For it is conceded that if the right was in appellee he got it from Hellenthal before its execution, which therefore could not affect him, and if he did not, the question as to its effect was solely between Hellenthal and Rothwell, in which appellee had no concern.

On behalf of appellee the claim is that the contract was not an executory contract of sale of a buggy, but for hiring and services of Hellenthal in building it for him; and that of appellants is that it was for the sale and purchase of a carriage, which was never executed for want of delivery, and therefore, that the property, unfinished and undelivered to appellee when taken by Rothwell, was still the property of Hellenthal, to whom only, if to anybody, he is liable for such taking.

In what cases—under what circumstances—a special order for a particular chattel, to be manufactured, is an executory contract for the sale and purchase of the chattel, and in what a contract for work and labor in manufacturing it, is a question which the authorities have made as difficult as it is important. The courts have undertaken to state and have acted upon different criteria and tests by which a given case is determined to be one or the other, and with different results from their application. English cases differ, and American cases differ from the English and among themselves. As is said in Wait's Actions and Defenses, p. 593, "No principle has yet been discovered which can wholly reconcile them." In this State no test has been adopted or suggested. Our courts are, therefore, at liberty to apply that which shall seem to them most consonant with reason and justice.

In 1 Benjamin on Sales (3d Eng. Ed. with Am. notes by Corbin, section 94 *et seq.*), these different tests are stated and the leading cases in both countries criticised. The principal questions on which the distinction turned were: whether the subject matter of the contract was already in existence, *in rerum natura;* whether the materials were furnished by the employer, or by the employe; whether the work and labor was of the essence of the contract, or whether

it was the materials that were found. The learned author attempts to show that the answer to neither of these would furnish the true test, and maintains with the utmost clearness and confidence that it is to be found in the rule laid down in Lee v. Griffin, 30 L. J. 2 B. 252; 1 B. & S. 272. This was then the latest reported decision, being in 1861. It was an action brought by a dentist to recover £21 for two sets of artificial teeth made by him for a deceased lady, of whom the defendant was executor. They were not in existence when ordered and never would have been but for the order, for they would not have fitted any but the person for whom they were intended. No order could be more special, or for more exclusive use. Plaintiff furnished the materials and did the work, for which peculiar skill was required. Each was essential to fill the order, and they may have differed but little in value. Yet the court held that an action for work and materials would not lie. It must be for goods sold; and the rule to be gathered from the opinions of the several judges given in that case, as stated by Benjamin, Sec. 103, is that "if the contract is intended to result in transferring for a price from B to A a chattel in which A had no previous property, it is a contract for the sale of a chattel," of which he says that from the very definition of a sale it would seem to be at once deducible.

We are inclined to accept this as the better and true test and think its application to this case necessitates a reversal of the judgment. The facts—so fully stated because of the kind of question made—in our judgment clearly show that the intention and contract of the parties contemplated a completed carriage for appellee. That he paid the price in advance of its completion, and that it was understood from the first by the employes in the shop to be intended for him, do not affect the contract. It is not claimed that he owned any of the materials used in its construction so far as it was constructed. Hellenthal was not made his agent to purchase them or any of them for him. He did not know that any purchased by the money he advanced were used in its

construction. That money, when received by Hellenthal, became his absolutely, to spend as he might see fit. If he bought with it any material for the buggy ordered, he was at liberty to sell or otherwise use it according to his own will, and make the buggy out of other. If in the course of its construction it had been destroyed in whole or part, his obligation to furnish the carriage as ordered would have remained in full force and been fully satisfied by another.

That the one in question was not completed and tendered to, or set apart for and accepted by appellee, before Rothwell took possession, is not only shown by his own testimony but is conceded by the instruction given to the jury by the court at his instance. It is specifically shown that the lamps were not on it, and generally that it was not finished. Appellant says he had to have work done on it after he replevied it, in order to finish it, and does not claim that he had at any time before accepted it, or that it had been tendered to him. The first instruction for plaintiff contains, among others, the following hypothesis: "And if the jury find from the evidence, that before the said carriage had been completed by said Hellenthal in accordance with his said contract with the plaintiff and while it was yet in his possession under his said contract with the plaintiff, to be by him completed, the defendant purchased the same from Mrs. Magdalene Hellenthal," and instructs that they should, nevertheless, find that the property was in the plaintiff, if they further find the contract as alleged, the payment of part in advance, the work begun, payment of balance when nearly completed, and the carriage left by plaintiff with Hellenthal to be completed.

The theory of the court, as of the plaintiff, was that this contract, calling for a peculiar style of carriage, not generally manufactured by Hellenthal for his trade nor kept in stock, and ordered in view of his reputation for skill, was what some of the books designate as a special order, or a contract for hiring and service, and not a contract of sale; that the carriage, as its construction progressed, was all the time the product of the labor and skill which plaintiff had hired, and was therefore his property.

We hold that this was a substantially erroneous view and compelled a verdict contrary to the law and the evidence, for which and its result the judgment should be reversed and the cause remanded; and so it will be.

Reversed and remanded.